UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES V. FARNSWORTH,<br><br>                    Plaintiff,<br><br>     v.<br><br>TEDDI ARMSTRONG; JACKIE BRANNAN; BRUCE GAGE; WASHINGTON STATE DEPARTMENT OF CORRECTIONS; FIVE UNKNOWN HEALTH CARE PROVIDERS,<br><br>                    Defendant. | CASE NO. 20-5007 MLP MJP<br><br>ORDER ON OBJECTIONS TO THE REPORT AND RECOMMENDATION |

This matter is before the Court on the Report and Recommendation of Magistrate Judge Michelle L. Peterson (Dkt. No. 101 ("R&R").) Having reviewed the R&R, Plaintiffs Objections to the R&R (Dkt. No. 112), Defendants' Motion for Summary Judgment, Plaintiffs' Response to the Motion (Dkt. No. 97), the Reply (Dkt. No. 100), and all supporting materials, the Court ADOPTS in part and DECLINES TO ADOPT in part the R&R.

**BACKGROUND**

A complete set of facts are set forth in the R&R, but the Court finds it useful to review the record in the light of the objections.

Plaintiff Charles Farnsworth is a Vietnam War veteran who was injured in combat in 1968. (Amended Complaint ¶¶ 1-4 ("AC") (Dkt. No. 42).) Due to his time in combat, Farnsworth was diagnosed with Post-Traumatic Stress Disorder ("PTSD"), a Traumatic Brain Injury, severe depression and anxiety, and other mental health issues. (Id. at ¶¶ 4-5.) He also suffers from a heart arrythmia. (Id. at ¶5.) After he returned from Vietnam, Farnsworth began cycling in and out of the carceral system. (See generally, id. at ¶¶ 3-12.) He is currently a state prisoner confined at the Stafford Creek Corrections Center in Aberdeen, Washington.

Prior to his current incarceration, Farnsworth had been prescribed a number of medications for his mental health conditions that were either ineffective or had intolerable side effects. (AC at ¶¶ 7-9.) However, in 2008, a psychiatrist at Lompoc Correctional Institution prescribed Bupropion, an antidepressant, that worked effectively for Farnsworth. (Id. at ¶ 10.) In 2009, after his release into the community, Farnsworth was also prescribed Diazepam, an antianxiety medication, which successfully alleviated Farnsworth's stress and his heart arrythmia. (Id. at ¶ 11.)

In 2012, Farnsworth became incarcerated at the Washington State Penitentiary ("WSP"). (AC at ¶ 12.) When he arrived, he informed the mental health staff that he takes Bupropion and Diazepam to alleviate and control his mental health symptoms. (Id. at ¶ 13.) In return, WSP staff informed him that the Department of Corrections ("DOC") only provides those drugs in certain cases and there was no indication in Farnsworth's medical records that he had been receiving the drugs. (Id.) Farnsworth then obtained his medical records dating back to 1997, in addition to his

military records, to demonstrate his need, and previous prescription of, Bupropion and Diazepam. (Id. at ¶ 14.) However, the medical records were placed in Farnsworth's archived medical files rather than submitted to the Care Review Committee, who are required to approve of prescriptions such as these. (Id. at ¶¶ 15-16.) In 2015, Farnsworth began speaking to Dr. Grubb, a psychiatrist at WSP. (Id. at ¶ 17.) Farnsworth asked Grubb to review his archived medical records, after which Grubb took the records to the Care Review Committee. (Id. at 14.) The Care Review Committee placed Farnsworth back on Bupropion and Diazepam in 2017. (Id. at ¶ 21.)

In 2018, Dr. Gubb left WSP and Defendant Teddi Nee (née Teddi Armstrong), a Psychiatric-Mental Health Nurse Practitioner, assumed care of Farnsworth. (Declaration of Teddi Nee at 2 (Dkt. No. 91).) In 2019, the DOC transferred Farnsworth from closed custody to medium custody. (AC at ¶ 22.) Shortly after his arrival in medium custody, a nurse approached Nee to inform her that staff members caught Farnsworth "cheeking" and possibly selling his Bupropion to other inmates in his unit. (Nee Decl. at 2-3.) Nee's declaration does not elaborate on who these undisclosed staff members were, how it came that the nurse who approached Nee learned of it, what happened when these staff members supposedly caught Farnsworth "cheeking" and why they suspected him of selling the Bupropion to other inmates. There is also no indication that Farnsworth received an infraction for this alleged misconduct. Nee simply states that she believed the nurse and therefore ordered Farnsworth's prescription for Bupropion to be crushed and floated in a clear liquid as a way to make any abuse or diversion of the medication more difficult. (Id. at 3.) Nee later reached out to custody staff working in Farnsworth unit, who informed her that they did not locate any diverted drugs in his cell. (Id.) After ordering this change, the DOC Staff Pharmacist emailed Nee to explain that Farnsworth's

prescription was a sustained release version of the drug, which is not recommended to be crushed and floated. (Id.) As such, Nee changed Farnsworth's prescription from a sustained release to an immediate release of the drug. (Id.) She did not notify or alert Farnsworth to this change. (Id.)

A few weeks later, Farnsworth met with Nee. (Nee Decl. Ex. 4 (Dkt. No. 91-1).) Farnsworth reported that he felt like the medications were working well for him, but that the immediate release version of Bupropion was not as effective, and he asked why it had been changed. (AC at ¶ 28.) Nee informed him of the allegations of the unknown staff members accusing Farnsworth of diverting the drug. (Nee Decl. Ex. 4 at 2.) Upon hearing this, Farnsworth became very upset and states that he went into a disassociated state. (Id.; AC at ¶ 36.) Farnsworth told Nee that he wanted to stop all psychiatric medication. (Nee Decl. Ex. 4 at 2-3.) Nee claims she discussed the pros and cons of stopping all medications and she had him sign refusal of psychiatric care form. (Id.)

After suddenly stopping his medications. Farnsworth began experiencing severe PTSD symptoms, including waking up seven to eight times a night with nightmares related to his time in Vietnam, and having flashbacks during the day. (Nee Decl. Ex. 6 at 3.) Farnsworth asked that his medications get re-prescribed. (AC at ¶ 40.) Nee restarted Prazosin but refused to re-prescribe the Bupropion and Diazepam until she reviewed Farnsworth's record and compared it to the PTSD protocol. (Nee Decl. Ex. 6 at 3.)  When Nee and Farnsworth met again about two months after Farnsworth stopped taking the medication, Nee told Farnsworth that her review of his record indicated that he had not tried Amitriptyline and offered to start him on that. (Nee Decl. ¶ 16.) Farnsworth states that he tried Amitriptyline while incarcerated in California and the side effects were so bad that he had to stop. (Declaration of Charles Farnsworth ¶ 6 (Dkt. No. 112).) As such, he was not interested in taking Amitriptyline and asked that his case be reviewed by the

1  Care Review Committee. (Nee Decl. ¶ 16.) The Care Review Committee denied Farnsworth's
2  request to restart the Bupropion. (Id. at ¶ 18.)
3        Following the Care Review Committee's decision Farnsworth sent some angrily worded
4  messages to Nee. (Nee Decl. ¶ 19.) On August 7, 2019, Farnsworth was taken to the emergency
5  room for heart and chest pains. (AC at ¶ 45.) The treating physician prescribed Diazepam for
6  fourteen days. (Id. at ¶ 47.) That same day, Nee wrote a report to the DOC claiming she was
7  concerned for her safety given the messages Farnsworth wrote to her. (Nee Decl. ¶ 21.) As a
8  result, Farnsworth was transferred to Clallam Bay Corrections Center. (Nee Decl. ¶ 22.) Notably,
9  once Farnsworth was transferred, a doctor at Clallam Bay Corrections Center reviewed his
10 records and took Farnsworth before the Care Review Committee. (Farnsworth Decl. ¶ 8.) This
11 time, the Care Review Committee re-prescribed the Bupropion. (Id.)
12       Farnsworth brought this action against (1) Nee, (2) Jackie Brannan, a nurse employed by
13 the DOC, and (3) Bruce Gage, M.D. the Chief of Psychiatry for the DOC. He alleges Defendants
14 violated his rights under the Eighth and Fourteenth Amendments to be free from cruel and
15 unusual punishment by denying him access to his medications and retaliating against him.
16 Defendants now move for summary judgment.

## ANALYSIS

**A.    Standard of Review**

19       A district court has jurisdiction to review a Magistrate Judge's report and
20 recommendation on dispositive matters. Fed. R. Civ. P. 72(b). In reviewing the report and
21 recommendation, a district court "must make a de novo determination of those portions of the
22 record. . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); see also United States v. Raddatz, 447 U.S. 667, 675 (1980).

**B.      Summary Judgment Standard**

Summary judgment is granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). And underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita, 475 U.S. at 587.

**C.      Eighth Amendment Claims**

Because Farnsworth is pro se, the Court must construe his objections liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed."). The Court also holds his objections "to less stringent standards than formal pleadings drafted by lawyers." Id. Fed. R. Civ. P. 8(e) (All "pleadings must be construed so as to do justice."). In liberally construing Farnsworth's objections, he raises objections to the R&R's

findings as to his claims against Nee. Specifically, he argues that there is a dispute of fact as to whether Armstrong had credible evidence to suggest he was diverting the Bupropion, whether he refused to try a substitute drug, and whether Armstrong inappropriately influenced the Care Review Committee's decision to deny his re-prescription request.

1. Section 1983 Standard

To sustain a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) that he suffered a violation of rights protected by the Constitution or created by federal statute; and (2) that the violation was proximately caused by a person acting under color of state law. See Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of Section 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

2. Eighth Amendment Standard

The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 831 (1994). This duty includes ensuring that inmates receive adequate food, clothing, shelter, and medical care, and taking reasonable measures to guarantee the safety of inmates. Id. To establish an Eighth Amendment violation for inadequate medical care, a plaintiff must demonstrate that he had a serious medical need, and that defendants' response to that need was deliberately indifferent. Jeff v. Penner, 439

F.3d 1091, 1096 (9th Cir. 2006) )(citing McGuckin v Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(en banc)). There are three situations in which a medical need is serious: (1) "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (2) "the presence of a medical condition that significantly affects an individual's daily activities"; or (3) "the existence of chronic and substantial pain." McGuckin, 974 F.2d at 1059-60.

A prison official is deliberately indifferent to a serious medical need if he "knows of and disregards an excessive risk to inmate health." Farmer, 511 U.S. at 837. To be found liable under the Eighth Amendment, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "If a [prison official] should have been aware of the risk, but was not then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson v. Cty of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

Deliberate indifference is a high legal standard. Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1076); see also, Farmer, 511 U.S. at 835 ("ordinary lack of due care" is insufficient to establish an Eighth Amendment claim). The Ninth Circuit has previously stated that "a deliberately indifferent state of mind may be inferred when the course of treatment the doctors chose was medically unacceptable under the circumstances and they chose this course in conscious disregard of an excessive risk to plaintiff's health." Edmo v. Corizon, Inc., 949 F.3d 489, 495 (9th Cir. 2020) (internal quotation and citation omitted). "Yet even most objectively

unreasonable medical care is not deliberately indifferent." Id. "[M]ere indifference, negligence, or medical malpractice is not enough to constitute deliberate indifference." Lemire v. Cal. Dep't of Corrs. & Rehab., 726 F.3d 1062, 1082 (9th Cir. 1989) (internal citation and quotation omitted). But deliberate indifference may be found where prison officials "intentionally interfere with treatment once prescribed." Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999) (internal citation and quotation omitted).

     a.  <u>Eighth Amendment Claim against Nee</u>

   The record and Farnsworth's objections demonstrate that the case is more complex than originally believed and genuine issues of material fact exist. Farnsworth has properly demonstrated that he has a serious medical need with his mental health issues and heart arrythmia. Absent medication, Farnsworth's PTSD symptoms reemerged so severely that he woke up seven to eight times in the middle of the night with nightmares and experienced flashbacks during the day, during which he would isolate himself in his cell. (Nee Decl. Ex. 6.) He also had to be taken to the emergency room for his heart arrhythmia while he was off his medication. (AC at ¶¶ 45-46.) These are serious medical conditions that a reasonable doctor would find worthy of comment or treatment and ones that, left untreated, affect Farnsworth's individual daily activities. The question then turns to whether Farnsworth alleged acts or omissions sufficient to demonstrate that Nee's treatment was medically unacceptable and in conscious disregard of an excessive risk to him. The Court finds that the record indicates there are facts to suggest Nee's treatment was medically unacceptable, which makes granting summary judgment on this claim improper.

   In his objections Farnsworth argues that had he been allowed to join unknown defendants and conduct proper discovery, he could demonstrate that there is no credibility to the allegation that DOC staff had found Bupropion in his cell. (Objections at 7-8.) And that because he was

ORDER ON OBJECTIONS TO THE REPORT AND RECOMMENDATION - 9

1  unable to join the individuals who make up the Care Review Committee, he could not question
2  them as to the role Nee played in their decision to deny his re-prescription request. (Objections at
3  7-8.) Farnsworth's objections to discovery and joinder at this stage are misplaced and misguided.
4  At the summary judgment stage, the Court is required to review the evidence presented, not
5  opine on whether such evidence exists.
6        That being said, the Court does note that there are facts in the record that could suggest
7  deliberate indifference with regard to Nee's treatment of Farnsworth. Without corroboration or
8  speaking to Farnsworth, Nee changed Farnsworth's prescription from a sustained release to an
9  immediate release. When Farnsworth became upset and potentially disassociated upon hearing
10 he was accused of diverting his pills, he reacted by stating that he wanted to stop all of his
11 medications. Nee admits that she was aware that Farnsworth was upset, though she denies
12 noticing that he disassociated. (Nee Decl. Ex. 4.) Yet, while Farnsworth, an individual with
13 severe mental health issues, was visibly upset, Nee had him sign a refusal of treatment, including
14 the halting of medications he had taken for years, which came with risks that could arise from
15 such an abrupt stop. (Id.) These facts raise questions as to whether Farnsworth had the
16 appropriate mental capacity to make that decision. It stands to reason that an individual with
17 severe mental health issues whether disassociated or simply upset and emotional, may not have
18 the required mental capacity to make appropriate medical decisions regarding their treatment in
19 that state. And it is undisputed that Nee did not provide follow up care after Farnsworth had
20 calmed down to ensure that he still wanted to discontinue all medications and treatment despite
21 the associated risks. Risks that Nee herself was aware of:
22       "[Farnsworth] was very upset when leaving the office and he stated that he just wanted to go off everything. I again offered to taper the Bupropion, as he was
23       on the maximum dose recommended at the time. Tapering is a method of limiting withdrawals from certain medications by slowly weaning patients off of the drug.
24

> He verbalized understanding and stated that he wanted to discontinue all psychiatric medications on that day."

Nee Decl. ¶ 11.

> "He became so upset about this that he stated that he wanted to stop all psychiatric medication. . . Patient was advised of the risks of stopping these medications suddenly and he declined a taper."

Nee Decl. Ex. 4.

These undisputed facts raise questions as to the appropriateness of Nee's care and suggest that she was aware of the risks associated with the abrupt stop in Farnsworth's treatment.

When Farnsworth's symptoms inevitably began reoccurring, he made the reasonable request to start his medications again. Rather than get Farnsworth back on the medications they know work for him, Nee only re-prescribed one out of the four medications Farnsworth was previously on. Nee claims that Farnsworth was "focused on getting back on the Wellbutrin (Bupropion) and Diazepam. Refusing to try anything else." (Nee Decl. Ex. 6.) This fact is disputed by Farnsworth who states that he simply did not want to try Amitriptyline as he had previously tried it and experienced bad side effects. (Farnsworth Decl. ¶ 6.) Farnsworth argues that Nee made these comments to make it look like he was drug seeking. (Id. at ¶ 4.) The inference being that Nee's opinion influenced the Care Review Committee's decision to deny Farnsworth's request to be re-prescribed Bupropion. An argument that is underscored by the fact that once Farnsworth was transferred to Clallam Bay, a doctor reviewed his records and evaluated him, and took him before the Care Review Committee where he was placed back on Bupropion.

The record also demonstrates that Nee refused to re-prescribe the Diazepam, which managed Farnsworth's heart arrhythmia and anxiety. Farnsworth was not accused of diverting the Diazepam, so it is unclear why Nee refused to re-prescribe it. The record also indicates that

Nee did not provide any medication that would treat Farnsworth's heart arrhythmia. Later, when Farnsworth was taken to the emergency room for extreme chest pains, the treating provider prescribed Farnsworth Diazepam. (AC at ¶¶ 45-47.) Taking these facts in the light most favorable to Farnsworth, there is a genuine issue of material facts as to whether Nee improperly interfered with Farnsworth's DECLINES TO ADOPT the R&R with regard to Farnsworth's Eighth Amendment claim against Nee.

          b.      Eighth Amendment Claim Against Brannan

Jackie Brannan is a nurse employed by the Washington DOC at WSP. (Declaration of Jackie Brannan ¶ 2 (Dkt. No. 90).) Farnsworth alleges that Brannan told him during pill-line that he should not be receiving his medications. (AC at ¶ 23.) This is the only mention of Brannan in Farnsworth's Amended Complaint. In his response to Defendants' Motion for Summary Judgment, Farnsworth asserts that Brannan used "an accusatory and negative tone of voice" when telling him that he should not be receiving the drugs he had been prescribed. (Resp. at 24.) Even assuming this to be true, accusatory and negative comments are insufficient to demonstrate she was deliberately indifferent to a serious medical need. Farnsworth's allegations are insufficient to demonstrate that Brannan's actions violated his Eighth Amendment rights. The Court ADOPTS the R&R's conclusion as to this claim.

**D.    Conspiracy Claims**

Farnsworth alleges that all three Defendants conspired to violate his Eighth Amendment rights by depriving him of his medication. (Am. Compl. ¶¶ 38, 56, 59.) To establish liability for a conspiracy in an action brought under Section 1983, a plaintiff must "demonstrate the existence of an agreement or meeting of the minds" to violate constitutional rights. Crowe v. Cty of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) (internal citation omitted). "Such an agreement need

not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of defendants." Id.

Farnsworth's conspiracy claims as to Brannan and Nee are based on his belief that Brannan's conduct during the pill-line is connected to Nee's decision to change his Bupropion from sustained release to immediate release. In support of this allegation Farnsworth provided a declaration, and the declaration of a fellow inmate, Johnathan Frohe. (Resp. at 46-54.) Farnsworth states that his medication was changed within days of his interaction with Brannan. (Id. at 48.) Frohe's declaration states that he "overheard a conversation between Brannan and another healthcare provider when Brannan said she'd informed Armstrong [Nee] that Farnsworth had been rude toward her in the pill-line and that she had gone to his cell and thought he was cheeking his meds, maybe even selling them." (Id. at 54.) In his objections, Farnsworth argues that if he were allowed to join additional defendants and conduct proper discovery, he could demonstrate there was no credibility to the allegation that he was diverting Bupropion. (Objections at 7-8.)

But even if the Court were to accept Farnsworth's arguments as true and find there was a meeting of the minds between Brannan and Nee, changing the formulation of the Bupropion alone does not violate Farnsworth's Eighth Amendment rights. There is nothing in the record to indicate, and Farnsworth does not offer any arguments, to demonstrate that changing the formulation of his Bupropion was medically unacceptable under the circumstances. Instead, the record indicates that Nee initially ordered the Bupropion to be crushed and floated, without changing the prescription. Upon learning that it is not advisable to crush and float a sustained release, Nee changed the prescription to an immediate release. Though the changing of the Bupropion was the impetus for the later events, at this point, there are no facts to indicate that

1   Nee had denied or interfered with Farnsworth's ability to take his prescriptions. Because this
2   change does not constitute a violation of the Eighth Amendment, Farnsworth's conspiracy claims
3   against Brannan and Nee fail.
4       Farnsworth also asserts in his Amended Complaint that Dr. Gage conspired with the other
5   Defendants to deprive him of his Eighth Amendment rights when he voted to deny the re-
6   prescription of Farnsworth's medications. (AC at ¶ 19.) This is Farnsworth's only claim against
7   Gage. It is an apparent reference to the Care Review Committee meeting at which Farnsworth's
8   request to have psychotropic medications re-prescribed was denied. But the evidence in the
9   record demonstrates that only Nee was present at that meeting and she abstained from voting.
10  There can be no conspiracy if none of the alleged conspirators participated in the conduct.
11      Because Farnsworth has failed to demonstrate that the conduct Defendants allegedly
12  conspired to commit rises to the level of a constitutional violation his conspiracy claims fail.
13  The Court ADOPTS the R&R's conclusion as to this requested relief.

### E.  First Amendment Retaliation

15  Farnsworth alleges that his "due process rights to access the courts were violated when
16  Defendants retaliated against him for filing grievances." (Addendum to AC at 2 (Dkt. No. 42-1).)
17  He also alleges that because of these retaliatory actions, he suffered a PTSD episode, was
18  infracted, placed in the Intensive Management Unit, and transferred. (Id.) Farnsworth does not
19  raise any objections to the R&R's findings as to this claim and the Court sees no reason to
20  modify or change the R&R's recommendation. The Court ADOPTS the R&R's conclusion for
21  Farnsworth's retaliation claims.

**F.      Defendants' Motion to Strike**

Defendants brought a Motion to Strike a portion of Farnsworth's Response to the Motion for Summary Judgment. Because the portions Defendants asked to strike were not considered by the Court in reviewing the R&R, or raised in Farnsworth's objections, the Court declines to revisit the Motion. The Court ADOPTS the R&R's recommendation on Defendants' Motion to Strike.

**CONCLUSION**

The Court ADOPTS in part and DECLINES TO ADOPT in part the Report and Recommendation. The Court DECLINES TO ADOPT the R&R's recommendation as to Farnsworth's Eighth Amendment claim against Nee. The Court finds that genuine issues of material facts exist making summary judgment inappropriate on this claim.

The Court otherwise ADOPTS the R&R and grants summary judgment in favor of Defendants for all other claims.

The clerk is ordered to provide copies of this order to all counsel.

Dated November 21, 2022.

Marsha J. Pechman
United States Senior District Judge