UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES V. FARNSWORTH,<br><br>                Plaintiff,<br><br>    v.<br><br>TEDDI ARMSTRONG; JACKIE BRANNAN; BRUCE GAGE; WASHINGTON STATE DEPARTMENT OF CORRECTIONS; FIVE UNKNOWN HEALTH CARE PROVIDERS,<br><br>                Defendant. | CASE NO. 20-5007 MLP MJP<br><br>ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION AND THE COURT'S INITIAL RULING ON QUALIFIED IMMUNITY |

This matter is before the Court on Defendants' Motion for Reconsideration. (Dkt. No. 115). The Court had previously stayed this issue until the matter of counsel could be resolved for Plaintiff. Referral services were unable to locate pro bono counsel for Plaintiff, so the Court now proceeds with Defendants' Motion. Defendants ask the Court to consider their assertion of qualified immunity, which they asserted in their motion for summary judgment. (Dkt. No. 89.) The issue of qualified immunity was not addressed in the Report and Recommendation;

therefore, the Court did not address it in its Order on the Objections to the Report and Recommendation. ("Order on R&R" (Dkt. No. 113)). The Court does so now. And because Plaintiff submitted an Opposition Brief to Defendants' Motion (Dkt. No. 122), the Court considers the issue fully briefed.

**BACKGROUND**

Plaintiff Charles Farnsworth is a Vietnam War veteran who was injured in combat in 1968. (Amended Complaint ¶¶ 1-4 ("AC") (Dkt. No. 42).) Due to his time in combat, Farnsworth was diagnosed with Post-Traumatic Stress Disorder ("PTSD"), a Traumatic Brain Injury, severe depression and anxiety, and other mental health issues. (Id. at ¶¶ 4-5.) He also suffers from a heart arrythmia. (Id. at ¶5.) After he returned from Vietnam, Farnsworth began cycling in and out of prison. (See generally, id. at ¶¶ 3-12.) He is currently a state prisoner.

In 2012, Farnsworth became incarcerated at the Washington State Penitentiary ("WSP"). (AC at ¶ 12.) When he arrived, he informed the mental health staff that he takes Bupropion and Diazepam to alleviate and control his mental health symptoms. (Id. at ¶ 13.) In 2018, Defendant Teddi Nee (née Teddi Armstrong), a Psychiatric-Mental Health Nurse Practitioner, assumed care of Farnsworth. (Declaration of Teddi Nee at 2 (Dkt. No. 91).) In 2019, the DOC transferred Farnsworth from closed custody to medium custody. (AC at ¶ 22.) Shortly after his arrival in medium custody, a nurse approached Nee to inform her that staff members caught Farnsworth "cheeking" and possibly selling his Bupropion to other inmates in his unit. (Nee Decl. at 2-3.) There is no indication that Farnsworth received an infraction for this alleged misconduct. Nee later reached out to custody staff working in Farnsworth's unit, who informed her that they did not locate any diverted drugs in his cell. (Id. at 3.) Regardless, Nee changed Farnsworth's

|   |   |
|---|---|
| 1 | prescription from sustained release to an immediate release so it could be crushed and floated in |
| 2 | a clear liquid, making any diversion or abuse more difficult. (Id.) |
| 3 |     A few weeks later, Farnsworth met with Nee. (Nee Decl. Ex. 4 (Dkt. No. 91-1).) |
| 4 | Farnsworth reported that he felt like the medications were working well for him, but that the |
| 5 | immediate release version of Bupropion was not as effective, and he asked why it had been |
| 6 | changed. (AC at ¶ 28.) Nee informed him of the staff members allegations accusing Farnsworth |
| 7 | of diverting the drug. (Nee Decl. Ex. 4 at 2.) Upon hearing this, Farnsworth became very upset |
| 8 | and states that he went into a disassociated state. (Id.; AC at ¶ 36.) Farnsworth told Nee that he |
| 9 | wanted to stop all psychiatric medication. (Nee Decl. Ex. 4 at 2-3.) Nee claims she discussed the |
| 10 | pros and cons of stopping all medications and she had him sign refusal of psychiatric care form. |
| 11 | (Id.) |
| 12 |     After suddenly stopping his medications, Farnsworth began experiencing severe PTSD |
| 13 | symptoms, including waking up seven to eight times a night with nightmares related to his time |
| 14 | in Vietnam and having flashbacks during the day. (Nee Decl. Ex. 6 at 3.) Farnsworth asked that |
| 15 | his medications get re-prescribed. (AC at ¶ 40.) Nee restarted Prazosin but refused to re-prescribe |
| 16 | the Bupropion and Diazepam until she reviewed Farnsworth's record and compared it to the |
| 17 | PTSD protocol. (Nee Decl. Ex. 6 at 3.) When Nee and Farnsworth met again about two months |
| 18 | after Farnsworth stopped taking the medication, Nee told Farnsworth that her review of his |
| 19 | record indicated he had not tried Amitriptyline and offered to start him on that. (Nee Decl. ¶ 16.) |
| 20 | Farnsworth claims he tried Amitriptyline while incarcerated in California and the side effects |
| 21 | were so bad that he had to stop. (Declaration of Charles Farnsworth ¶ 6 (Dkt. No. 112).) He was |
| 22 | not interested in taking Amitriptyline and asked that his case be reviewed by the Care Review |
| 23 |   |
| 24 |   |

1  Committee. (Nee Decl. ¶ 16.) The Care Review Committee denied Farnsworth's request to
2  restart the Bupropion. (Id. at ¶ 18.)
3       Farnsworth then brought this action against Nee and other DOC employees for violations
4  under the Eighth and Fourteenth Amendments for denying him access to medications and
5  retaliating against him. Defendants previously moved for summary judgment, which resulted in
6  the dismissal of all the Defendants with the exception of Nee. Defendants now bring a Motion to
7  Reconsider summary judgment as to Nee due to qualified immunity.

8                                            **ANALYSIS**

9  **A.    Qualified Immunity Standard**

10       "Qualified immunity shields government officials under section 1983 unless (1) they
11  violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was
12  'clearly established at the time.'" Rico v. Ducart, 980 F.3d 1292, 1298 (9th Cir. 2020) (internal
13  quotation and citation omitted). Courts are "permitted to exercise their sound discretion in
14  deciding which of the two prongs of the qualified immunity analysis should be addressed first in
15  light of the circumstances in the particular case at hand." Lal v. California, 746 F.3d 1112, 1116
16  (9th Cir. 2014). The facts are construed in the light most favorable to the plaintiff. Estate of Ford
17  v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002).

18  **B.    Clearly Established Right**

19       The Court begins with the second prong, whether the unlawfulness of the conduct at issue
20  has been "clearly established." It finds that it has not.
21       "For the second step in the qualified immunity analysis – whether the constitutional right
22  was clearly established at the time of the conduct – the critical question is whether the contours
23  of the right were 'sufficiently clear' that every 'reasonable official would have understood that
24

what he is doing violates that right.'" <u>Mattos v. Agarano</u>, 661 F.3d 433, 442 (9th Cir. 2011) (en banc) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011). This inquiry "must consider whether the violative nature of the defendants particular conduct is clearly established in light of the specific context of the case." <u>Rico</u>, 980 F.3d at 1298 (internal quotation and citation omitted). "[W]here this is no case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." <u>C.B. v City of Sonora</u>, 769 F.3d 1005, 1026 (9th Cir. 2014) (internal quotation and citation omitted).

In arguing "clearly established right," Farnsworth cites to <u>Hope v. Pelzer</u>, 536 U.S. 730, 740-41 (2002), to assert that he does not need to come forward with cases that are identical or even contain materially similar facts for the Court to find that a right is clearly established. Specifically, Farnsworth points to the Supreme Court's reasoning in <u>Hope</u>, that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." 536 U.S. at 741. And Farnsworth is correct in this regard. But absent prior case law that demonstrates the right is clearly established, Farnsworth still needs to show that preexisting law provided Nee with "fair warning" that her conduct was unlawful. <u>Id.</u> Farnsworth's citations to a handful of cases fails to do this.

Farnsworth cites to five cases that echo the rationale in <u>Hope</u>. Two of the cases Farnsworth cites to are Fourteenth Amendment discrimination cases, which involve materially different facts than those at issue here. See <u>Elliot-Park v. Manglona</u>, 592 F.3d 1003 (9th Cir. 2010); <u>Flores v. Morgan Hill Unified Sch. Dist.</u>, 324 F.3d 1130 (9th Cir. 2003). Fourteenth Amendment discrimination cases contain the right to be free from discrimination, which has been so well established that no reasonable official could claim otherwise. That right is not the right at issue here. Similarly, Farnsworth cites to <u>Furnace v. Sullivan</u>, 705 F.3d 2021 (9th Cir.

1  2013), which involves an Eighth Amendment claim for a guard's use of pepper spray against an

2  inmate. Whether the use of pepper spray was constitutional or not is not at issue in this case, and

3  therefore does not assist the Court in determining "clearly established law" for the interference of

4  medication. Farnsworth also cites to a case that the Court was unable to find – Wills v. Neven,

5  674 F.3d 1124 (9th Cir. 2020). The Court did find Wentzell v. Neven, 674 F.3d 1124 (9th Cir.

6  2012), but it is a Habeas Corpus case, which is inapplicable to the issues here.

7  Finally, Farnsworth cites to Sandoval v. Cnty of San Diego, which is understandable as it

8  deals with the right to adequate medical treatment and the Ninth Circuit discusses the Eighth

9  Amendment. 985 F.3d 657 (9th Cir. 2021), cert. denied sub nom. San Diego Cnty v. Sandoval,

10 142 S. Ct. 711 (2021). But that case involves a pretrial detainee who died in custody due to a

11 several hours long delay in calling paramedics. The Ninth Circuit in Sandoval discusses the

12 Eighth Amendment only to demonstrate that the standards under the Eighth Amendment for

13 individuals convicted of a crime and the Fourteenth Amendment, which applies to pretrial

14 detainees, are not the same. Therefore, any rationale made regarding the medical care provided

15 in Sandoval, does not apply here because the standards are different.

16 For all these reasons, Farnsworth did not meet his burden to demonstrate that Nee's

17 conduct violated clearly established law. A failure to meet this prong means the Court is not

18 required to analyze whether Nee violated a constitutional right. The Court finds that Nee is

19 entitled to qualified immunity.

20                                                  **CONCLUSION**

21 The Court, having considered the issue of qualified immunity for Defendant Nee, finds

22 that Farnsworth failed to meet his burden in overcoming Defendants' assertion of the doctrine

23 and that Nee is entitled to qualified immunity. Given this, the Court need not address Defendants

24

remaining objections to the Order on the R&R. Defendants are entitled to Summary Judgment as to Farnsworth's claims against Nee. As this is the only remaining claim, the Court GRANTS Summary Judgment for Defendants and DISMISSES the case with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 23, 2023.

Marsha J. Pechman
United States Senior District Judge